George C. Johnson v. Commissioner.
Johnson v. Commissioner
Docket Nos. 25643, 25644.
United States Tax Court
1952 Tax Ct. Memo LEXIS 353; 11 T.C.M. (CCH) 31; T.C.M. (RIA) 52007; January 17, 1952
*353 1. Taxable income. - Petitioner prepared income tax returns for individuals who gave money to an alleged religious association; held, the amount given constituted income to petitioner. 2. Presumption. - Amount of petitioner's additional income as determined by respondent, held, to be correct upon petitioner's failure to prove error. 3. Penalty. - Petitioner failed to file a 1947 return; held, failure to file a return was not due to reasonable cause, and the penalty is imposed. George C. Johnson, pro se. E. C. Crouter, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings, consolidated for hearing, involve deficiencies in income tax and a penalty as follows: Docket No.
Year
Deficiency
25% penalty
25643
1946
$655.33
25644
1947
615.00
$153.75
The issues are (1) whether petitioner received taxable income under section 22(a), Internal Revenue Code; (2) whether the amounts as determined by respondent are correct; and (3) whether petitioner is liable for the penalty for failure to make and file a return for 1947. Findings of Fact Petitioner, an attorney living at Los Angeles, California, filed his 1946 individual income tax return on the cash basis with the collector of internal revenue for the sixth district of California. Petitioner failed to file a tax return for 1947. Petitioner came to Los Angeles in about 1927 and opened a law office. Seven or eight years later he published *355 a book on effective thinking and motivation. Since that time he has been the author of many articles and books on the same or similar topics. [1] Even though the first books indicated that petitioner was the author, these books were published under the name of "100% Effective Thinking". Later the publisher's name was changed to the "Effective Thinking Foundation". To aid in the distribution and sale of these books, under the name of the Effective Thinking Foundation, petitioner mailed advertisements and cards to thousands of individuals in the United States and abroad. These advertisements attempted to interest the addressees not only in petitioner's books, but also in becoming members of the Effective Thinking Foundation. *356 The following, in petitioner's own words, describes the Effective Thinking Foundation and how one may avail himself of membership in that Foundation: "The EFFECTIVE THINKING FOUNDATION is a working organization of the REASONING MIND FOUNDATION, an ecclesiastical Foundation whose aim and purpose is to teach this law of Motivation to all peoples of all nations, and of the REASONING MIND SOCIAL SECURITY FOUNDATION, an eleemosynary organization to give social security to reasoning minds against fear, want and loneliness in old age. "The REASONING MIND FOUNDATION holds for the members the license to publish, teach and sell throughout the world the works of the Founder. The Foundations will have all the profits from this new form of Reason and Creation for the 28 year copyright period and the renewal copyright for a second 28 years, together with the title to the works, as set forth in the license of record in the United States Copyright office. As this work is established in the various educational systems, there will be sufficient sales for sufficient profits to accomplish the aim and purpose of the author beyond the wildest dream of any member. * * *
"* * * books on Motivation *357 are not to be sold, but are merely lend-leased for self-study. This will control the use of the books for teaching only by qualified member instructors, to protect the students as well as the members. Each applicant is asked to deposit the commodity purchasing value of 3 bushels of wheat (now fixed at $3.00 U.S.) as a guarantee to return the books within 10 days after receipt. The $3 is refunded if the books are returned as guaranteed. If the books are not returned within ten days, they may be retained for further self-study and the $3 deposited is then credited to the cost of handling the account of the applicant. The cost of qualifying the applicant through a ten lesson airmail correspondence course is 100 bushels of wheat ($100.00 U.S.), with the guarantee that the applicant complete the studies within 100 days and that if he then states why he believes the key to the mystery of the kingdom of power as applied by Solomon in I Kings 3:28 has not been taught him, the $100 is refunded and the student owes nothing for the teaching received. * * * "Students that qualify themselves to teach in the opinion of the Foundations, will be offered FREE a full voting membership and entitled *358 to participate in elections and to teach the work under the supervision of the Foundations at the same prices as are given to all members. Under the present rules and regulations the money received for mail courses is divided as follows: 10% for selling the course and 20% for teaching the course. A similar amount of 10% and 20% is deposited by the Foundation to the Social Security credit of the participating member, against which he later will be entitled to borrow without interest for social security purposes but not for any business ventures. The remaining 40% of tuition goes to the Foundations for their operation costs, royalty credit, social security features, etc. The Foundations being non-profit organizations, no one can draw any money except for actual services rendered. The Trustees serve without compensation but may be paid for other services rendered on the same basis as other members are paid. "Failure to return the basic book (MOTIVATION: A FIVE QUESTION SYSTEM OF REASON AND CREATION), within 10 days after receipt automatically gives the holder a NON-VOTING MEMBERSHIP and authorizes us to credit the $3 guarantee deposited to the cost of handling his membership. That *359 permits the non-voting member to retain the book for self-study as long as he desires it as a member. * * *
"We will also pay $1.50 for each firm $3 NON-VOTING MEMBERSHIP application sent us. We will also pay 20% cash to any non-voting or voting member for any firm $80.00 10-lesson airmail course sold to non-members and 20% of any $100 mail course when the student releases our guarantee to refund his money if we do not qualify him for voting membership in 100 hours within 100 days from date the contract is accepted. * * * This is an opportunity for anyone to make money and to work into our desirable, dignified and independent vocation with security against fear, want and old age loneliness. "Each member that qualifies by taking the ten lesson airmail correspondence course and is accepted as a full member is entitled to one vote as a member, and in addition will have one extra vote for each new member he qualifies into memvership through the mail course and one extra vote for each $100 on credit to his Social Security Account in the affiliated Foundations. * * *" On July 7, 1947, the following articles of incorporation were filed in the State of California: "ARTICLES OF *360 INCORPORATION "REASONING MIND FOUNDATION A Corporation Sole California
"To accomplish the Aim of creating a Corporation Sole in the State of California pursuant to the provisions of California Civil Code, Sections 605g to 605n inclusive and other laws applicable to Religious Societies, for the Purpose of administering and managing the affairs, properties and temporalities of said Religious Society the undersigned states under the provisions of said Sec. 605h as follows: "1. The name of the Corporation shall be: "REASONING MIND FOUNDATION "2. That the undersigned is the Founder thereof and is Presiding Officer and Co-ordinator thereof for life and is empowered to control all actions of said society and is duly authorized by the rules, regulations and disciplines of said religious society to take this action. "3. That the County in the State of California where the principal office for the transaction of business of the Corporation Sole is to be located is Los Angeles County. "4. That the manner in which any vacancy occurring in the office of said Presiding Officer and Co-ordinator is required to be filled by the rules, regulations and constitution of the society shall *361 be by two-third vote of the members of the religious society. "IN WITNESS WHEREOF, the undersigned as Presiding Officer and Co-Ordinator, has subscribed these Articles of Incorporation at Cambridge, Illinois, and submits them to the Secretary of State of California for filing in his office in compliance with the law. Done this Friday, the 13th of June, A.D., 1947. "[Signed] George Cornelius Johnson George Cornelius Johnson, Presiding Officer, Co-Ordinator of said religious society." During the months of January, February and March in 1946 and 1947, petitioner rented on office in the Y.M.C.A. Building on Whittier Boulevard in Los Angeles so that he could prepare income tax returns. The money received through the preparation of these returns is the amount involved in this case. At times he employed an assistant to aid him in the preparation of these returns. Prior to the occupancy of this office petitioner copied names and addresses from the official public voting records in Los Angeles so that he could compile a mailing list. By mail and newspaper advertisements he announced that he would be available to members of the Foundation to assist them in the preparation of their *362 tax returns. The only requirement for membership, to secure this assistance, was a contribution of money to the Foundation. Contributions of from $2 to $20 were accepted by petitioner for the preparation of these tax returns. A few isolated returns were prepared without a prior contribution; however, where this was done, the individuals had become members in the manner prescribed above. All money received through the preparation of these returns was banked in the name of George C. Johnson, trustee. The greatest proportion of the returns was prepared for taxpayers of Mexican descent who could neither speak nor read English. Petitioner was able to assist these taxpayers because he had lived in Mexico and spoke their language. When petitioner prepared the income tax returns he indicated on the returns that his address was 2424 Whittier Boulevard, a trailer park. This was also the address of the Foundation. The Foundation did not own or regularly rent a building, church or lecture hall. Petitioner and the Foundation carried on their work through correspondence and occasional lectures at public halls. A record of income and disbursements kept by petitioner under the name of "Effective *363 Thinking Foundation" indicates "Misc. income tax contributions $3,313.86" for 1946 and "Income tax return fees $4,751.05" for 1947. Petitioner did not maintain any record of his personal income or expenditures, but the Effective Thinking Foundation's record of income and disbursements reflects items of a personal nature, some of which are identified with the petitioner. Petitioner recorded his old age pension payments as income to the Effective Thinking Foundation. These payments were first received in April, 1947. On the 1946 income tax return petitioner reported that he received $520 as payment for his work as trustee for the Foundation. In that same year the Effective Thinking Foundation paid petitioner's medical bills in the amount of $325.50. Petitioner reported $845.50 adjusted gross income. Petitioner deducted $283.23 ($325.50 less 5% of $845.50) as a medical expense. Respondent disallowed any part of the $325.50 as a deduction from adjusted gross income. In 1947 petitioner received a net income of $4,025.05. Petitioner's failure to file a 1947 income tax return was due to willful neglect. Opinion The first issue to be considered is whether petitioner received the *364 additional taxable income as asserted in the deficiency notice. Petitioner contends that his individual income consisted of a small trustee's fee and an old age pension. He contends that the contributions which were received prior to the preparation of the income tax returns were given to the Foundation, and he only accepted the members' contributions in his capacity as trustee for the Foundation. Further, under section 101(18) of the Internal Revenue Code, [2] because the Foundation showed a deficit at the end of each year, there was no distributable income accruing to him from its activities. *365 Respondent contends that the money received prior to the preparation of the income tax returns was income to the petitioner under section 22 (a), I.R.C., [3] and further that the Foundation was not exempt from Federal income tax returns within the contemplation of section 101(18). The second paragraph of section 29.22(a)-2 of Regulations 111 is applicable to a factual situation such as we have here and is as follows: "SEC. 29.22(a)-2. COMPENSATION FOR PERSONAL SERVICES. - * * *
"The value of services need not be included in gross income when rendered directly and gratuitously to an organization described in section 23 (o). Where, however, pursuant to an agreement or understanding services are rendered to a person for the benefit of an organization described in section 23 (o) and an amount for such services is paid to such organization by the person to whom the services are rendered, the amount so paid constitutes income to the person performing the services *366 even though at the time of the agreement or understanding the person making the payment acknowledges his liability to make payment to such organization. The second sentence of this paragraph shall not apply where such an agreement or understanding has been entered into prior to May 14, 1942 (the date of the approval of Treasury Decision 5151)." This regulation was adopted in conformity with T.D. 5151, 1942-1 C.B., p. 34. We shall not consider whether the writings and publications of petitioner's systems and concepts of mental processes and reasoning, as applied to the every day business and personal problems of life, are sufficient in themselves to be a religious organization, association or corporation within the contemplation of section 101(18). This consideration would not aid us in determining petitioner's liability as to the money received for the preparation of the income tax returns. Further, we shall not consider the effect of the creation of the corporation sole, because it was created in July, 1947, and the earnings in question were received prior to March 15, 1947. The evidence merely shows that the petitioner wrote, published and distributed various *367 pamphlets and publications, relating to the systems of study and reasoning, and that these publications were distributed and sold to the public generally. Petitioner set up a special office during the first two or three months in 1946 and 1947 solely for the preparation of income tax returns. Petitioner advertised through the mail and newspapers that he would assist the Foundation's members in the preparation of their returns. It is noteworthy that only members were assisted, but the only requirement for membership was the payment of the contribution prior to the preparation of the return. In a few isolated cases individuals having formerly purchased petitioner's books were assisted in the preparation of their returns without the payment of an additional contribution. It is immaterial that the price paid was called a "contribution". In reality it was compensation for services rendered, and compensation for services rendered is the most common form of income. The situation as we find it here is just the situation as contemplated by section 29.22(a)-2, Regulations 111. Petitioner rendered services to persons, and an amount for such services was paid to the Foundation by the person *368 to whom the services were rendered. The inescapable result, in the words of the regulation, is "the amount so paid constitutes income to the person performing the services". A second issue is raised by the petitioner's allegations of error as to actual amounts utilized in determining the deficiences. Respondent made the determination on the basis of the only figures available, income and expenses as recorded in the books kept by the petitioner under the name of the Effective Thinking Foundation. The fact that the books of the Effective Thinking Foundation contain the only record of the money received for the preparation of the tax returns does not impel us to sustain petitioner's contention that there was error in the determination of his deficiency. The bookkeeping record itself does no prove that the amounts so recorded were not income to the petitioner. The determination of respondent carries a presumption of correctness, and petitioner has the burden of proving it incorrect. Cf. Welch v. Helvering, 290 U.S. 111. Petitioner has failed to prove where respondent has erred in the deficiency determination; therefore, respondent's determination must stand. Respondent, *369 under section 291(a), has determined a 25 per cent negligence penalty for failure to file a 1947 return. The penalty is not imposed when it is shown that the failure to file is due to reasonable cause and not to willful neglect. Considering that petitioner was an attorney, who prepared tax returns for others, and who failed to file his own return, we can only say his failure to file was due to willful neglect. Accordingly, the penalty will be imposed. The amount of $325.50 which the Foundation paid for petitioner's medical expenses was properly included in petitioner's return as his income. The payment of petitioner's medical expenses is constructive income for him. Cf. Reg. 111, section 29.42-2 and section 29.42-3. A deduction for medical expenses "actually paid" is a deduction "allowable only to individuals". Reg. 111, section 29.23(x)-1. Since the Foundation paid petitioner's medical expenses, he has not paid these bills, and therefore he is not entitled to the deduction. The question of the above medical deduction for the petitioner was not a formal issue in this case. However, as petitioner made an oral objection to the respondent's disallowance, we feel that the above is *370 pertinent to the decision. Decisions will be entered for the respondent. Footnotes
1. The following is a list of the publications written by petitioner: The Creator's FIVE QUESTION SYSTEM OF REALIZATION, 1943. Moving the Will from WITHIN. 1945. Gold Standard Money, ITS dupes and YOU. 1945. Gold Standard Money Law Brief (Affirmed U.S.S. Ct.). 1935. The Creator's 2-QUERY, 5-QUESTION SYSTEM RULE. 1946. Motivation-Salesmanship. 1947. How I freed myself from: Diabetes, Arthritis, Neuritis, Rheumatism, Cataract of Eyes, Obesity, Blood Pressure, Doctor Bills, Drugs, OLD AGE and DEATH - at 68: with a BLOOD CIRCULATOR. 1949. IT - One Truth Unit Rule of Reason and Creation, for Self-Realization of desires. 1950. How to ask 5 questions to ANALYZE and PROVE each assertion without any dissenting opinion.↩
2. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * *
(18) Religious or apostolic associations or corporations, if such associations or corporations have a common treasury or community treasury, even if such associations or corporations engage in business for the common benefit of the members, but only if the members thereof include (at the time of filing their returns) in their gross income their entire pro-rata shares, whether distributed or not, of the net income of the association or corporation for such year. Any amount so included in the gross income of a member shall be treated as a dividend received.↩
3. SEC. 22. GROSS INCOME - DEFINITION. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *.↩